* * * * * * * * * * *
The Full Commission has reviewed the Deputy Commission's Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. The Full Commission hereby AFFIRMS the Opinion and Award of Deputy Commissioner Dollar with some modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. American Home Assurance Company was the carrier on the risk, with AIG Claim Services, Inc., as its servicing agent.
3. The employee-employer relationship existed between the parties at all relevant times.
4. On January 2, 2001, plaintiff alleges she suffered a compensable injury by accident arising out of and in the course of her employment with defendant-employer to her neck, shoulders and back.
5. Plaintiff received short-term disability benefits at the rate of $150.00 per week gross for the period of March 7, 2001 to March 19, 2001, and from April 4, 2001 to April 30, 2001.
6. Plaintiff returned to work from March 20, 2001 to April 3, 2001.
7. The short-term disability benefits were paid under a fully employer-funded short-term disability plan. Defendants are entitled to a credit for all such payments pursuant to N.C. Gen. Stat. § 97-42.
8. The parties stipulated the following documentary evidence:
a. Medical records, 257 pages,
b. Form 22,
c. Plaintiff's job application, and
d. Plaintiff's pay history.
9. The issues for determination are whether plaintiff sustained an injury by accident arising out of and in the course of her employment on January 2, 2001, and, if so, to what benefits is she entitled; and whether plaintiff gave timely notice of her alleged injury of January 2, 2001.
 * * * * * * * * * * *
Based upon all of the evidence produced at the hearing, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was forty-eight years old and a high school graduate. Plaintiff began her employment with defendant-employer in 1996 at Plant 8 in Lexington as a glaze wiper. Plaintiff was promoted in 1997 to glaze inspector in the finishing department, where her duties included smoothing or spreading glaze evenly over furniture surfaces and wiping to desired consistency, brushing excess glaze from furniture, checking the paint quality, filling holes and cracks in furniture, cleaning up the furniture pieces, and preparing the parts to receive lacquer. Plaintiff used fine hair paint brushes, textile waste material, and a padding wheel to brush the glaze. Plaintiff could stop the production line if there was a problem and get the employee to show her the problem. Plaintiff opened and closed drawers, checked nightstands, and raised the pieces up to check the feet. Plaintiff generally worked alone when she inspected the pieces.
2. Beginning on or about August 24, 1998, plaintiff began experiencing pain in her shoulders and neck. The onset of these symptoms was not related to any injury or trauma. She began seeking treatment for these symptoms periodically. Plaintiff continued to seek treatment from her family doctor, Dr. Sundara Rajan, through 2000. She also sought treatment for complaints of tingling into her hand.
3. On March 6, 2000, plaintiff sought treatment from Dr. Rajan and complained of neck and left shoulder problems. Dr. Rajan diagnosed plaintiff with degenerative disc disease in the cervical spine and prescribed Celebrex. Plaintiff returned to Dr. Rajan in July 2000 and was given a refill of her medication.
4. Plaintiff was out of work over the Christmas holidays in 2000, during which time Plant 8 closed. When plaintiff returned to work in January 2001, she started working at Plant 2 in Linwood, which was at a different physical location from Plant 8. While out of work for the holidays, plaintiff had some improvement in her neck and shoulder symptoms.
5. On or after January 2, 2001, plaintiff began work at Plant 2 as a glaze inspector. Plaintiff's neck and shoulder symptoms persisted upon her return to work, and plaintiff also developed arm and hand pain in late January 2001. Plaintiff performed the same duties as she did at Plant 8, but she also highlighted furniture with a paintbrush at the edges and top of pieces. Plaintiff went upstairs to check big pieces of furniture. She also wiped glaze at the front and sides of a piece of furniture.
6. The production line was stopped on a daily basis at both Plant 8 and Plant 2 to correct or repair defects or inconsistencies in the furniture finish. Although plaintiff herself had the ability to stop the line at Plant 8, she could also at any time stop the line at Plant 2 by asking the lead worker to do so.
7. At Plant 2, plaintiff's duties were less strenuous and labor intensive than the work she had done at Plant 8. Specifically, she did not have to do any sanding at Plant 2 and the only new duty she performed at Plant 2 was highlighting, which only involved the use of two fingers and was on a smaller surface. Further, at Plant 2 there were more employees working on each piece of furniture than there were at Plant 8, which meant that plaintiff only had to work on part of a furniture piece, not the entire piece as she had at Plant 8. Also, at Plant 2 if plaintiff's assignment was to work on the upper portion of taller pieces of furniture, she received breaks when shorter pieces of furniture went through the line. Plaintiff's testimony that her duties were more strenuous at Plant 2 directly contradicts that of defendants' witnesses, John Conrad and David Stott. To the extent plaintiff's testimony is contrary to that of Mr. Conrad and Mr. Stott, plaintiff's testimony is found not credible on this matter.
8. At the hearing before the Deputy Commissioner, plaintiff testified that she began having pain in her neck, back, left shoulder and arm on or about January 2, 2001. Plaintiff contended that her symptoms became worse during January 2001 because she worked as a glaze inspector wherever defendants assigned her. Plaintiff stated that having to work on different pieces of furniture caused her to have these symptoms. However, the greater weight of the evidence showed that plaintiff always was required to work on different pieces of furniture during the regular performance of her job at both Plants 2 and 8 and she did not experience an interruption of her normal work routine when relocated to Plant 2.
9. On February 6, 2001, plaintiff returned to Dr. Rajan, reporting a history of neck and left shoulder and arm symptoms off and on for at least two years, which had worsened over the last six days. Plaintiff did not report any injury or event precipitating the worsening of her symptoms.
10. In mid to late February of 2001, plaintiff told lead worker Linda Johnson that she was having pain in her shoulder and neck. Plaintiff told Ms. Johnson that an injury occurred while she was at Plant 8 and never mentioned any injury at Plant 2. Ms. Johnson referred plaintiff to the plant nurse for swelling in her right hand. The plant nurse gave plaintiff a hand brace and ibuprofen, and plaintiff returned to work.
11. Dr. Rajan referred plaintiff to Dr. Gregory Mieden, a neurosurgeon at Johnson Neurological Clinic, who saw her on March 6, 2001. Plaintiff reported a history of neck and left shoulder problems, which initially improved, but became worse in January. An MRI revealed a herniated disc at C5-6 on the left with nerve impingement and cervical spondylosis at C4-5 and C6-7. Dr. Mieden felt that plaintiff's left arm symptoms were consistent with the MRI results. Dr. Mieden provided plaintiff with an out-of-work note. During the course of his treatment, Dr. Mieden discussed the possibility of surgery, but concluded plaintiff would not benefit from a surgical procedure.
12. Plaintiff returned to work from March 20, 2001 to April 3, 2001. Since April 3, 2001, plaintiff has not returned to work for any employer.
13. Plaintiff underwent a functional capacity examination (FCE) on June 1, 2001, which showed that plaintiff could perform sedentary or light duty work.
14. Dr. Mieden continued plaintiff out of work until July 24, 2001, when he provided a note to take her out of work indefinitely. At his deposition Dr. Mieden stated that he had kept plaintiff out of work indefinitely because he believed that defendant-employer had no light duty work available, but that he felt plaintiff could return to work after vocational rehabilitation assistance. Dr. Mieden referred plaintiff to Dr. John Begovich, a specialist in physical medicine and rehabilitation, for work hardening and conditioning.
15. On July 24, 2001, Dr. Mieden felt that plaintiff reached maximum medical improvement and released her from his treatment. Plaintiff retains a 10% permanent impairment to her cervical spine.
16. Defendants terminated plaintiff's employment, effective October 3, 2001, after she failed to return to work from medical leave within six months. This termination was in accordance with company policy.
17. Dr. Begovich began treating plaintiff on November 25, 2002 for pain management. During the course of his treatment, Dr. Begovich saw plaintiff every three months, providing anti-depressant therapy, anti-inflammatories, and physical therapy. As of the time of his deposition, Dr. Begovich found plaintiff had plateaued from a pain control perspective.
18. As of July 2003, Dr. Begovich authorized plaintiff to return to sedentary work beginning at four to six hours per day, and then working up to a full eight-hour day. However, there is no evidence in the record that plaintiff ever attempted to return to work for defendant-employer or sought other employment.
19. On or about April 21, 2004, rehabilitation professional Gina Vieceli performed a labor market survey that found there were jobs available in the surrounding area that would accommodate plaintiff's restrictions and limitations based upon the June 1, 2001 FCE and that these jobs provided wages comparable to the salary plaintiff was earning at the time of her injury.
20. Although plaintiff moved from Plant 8 to Plant 2 in January 2001, the greater weight of the competent evidence fails to show that she was performing any different type of work activity that could reasonably be construed to constitute an interruption of her normal work routine. In addition, there is no evidence that plaintiff sustained any incident that occurred within a cognizable time, but, rather, the greater weight of the evidence shows that plaintiff's back condition deteriorated gradually, beginning in 1998 during her employment at Plant 8 and continuing while she worked at Plant 2 beginning January 2, 2001. Therefore, plaintiff has failed to prove by the greater weight of the evidence that she sustained a compensable injury by accident.
21. Plaintiff has failed to prove by the greater weight of the medical evidence that she contracted a compensable occupational disease on or after January 2, 2001.
22. Although plaintiff did not file a Form 18 until September 21, 2001, the Form 19 completed by defendant-employer shows that plaintiff's supervisor had actual notice on February 2, 2001 that plaintiff alleged a work-related injury. In addition, defendants presented no evidence that they were prejudiced by any delay in reporting an injury.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In order to qualify for compensation under the Workers' Compensation Act, a claimant must prove both the existence and extent of disability. Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982). Plaintiff failed to prove by competent evidence that she sustained an injury by accident arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff argued that her claim is compensable as an injury by accident based on the different work duties she performed at Plant 2 or as a specific traumatic incident of the work assigned. However, the greater weight of the evidence fails to show that plaintiff's job duties changed to the extent that she had an interruption of her normal work routine or an unlooked for and untoward event that was not expected or designed by plaintiff, such as would constitute an injury by accident. Gladson v.Piedmont Stores, 57 N.C. App. 579, 292 S.E.2d 18, disc. reviewdenied, 306 N.C. 556, 294 S.E.2d 370 (1982).
3. As to plaintiff's second argument, the period during which plaintiff worked at Plant 2 from January 2, 2001 to February 6, 2001 is not a "reasonable time period" within which the Commission can determine a specific traumatic injury to have occurred. See, Fish v. Steelcase, Inc., 116 N.C. App. 703,449 S.E.2d 233 (1994), cert. denied, 339 N.C. 737, 454 S.E.2d 650
(1995), in which claimant was injured at some specific, identifiable time during a period of a month. The Court stated that "judicially cognizable does not mean `ascertainable on an exact date.' Instead, the term should be read to describe a showing by plaintiff which enables the Industrial Commission to determine when, within a reasonable period, the specific injury occurred. The evidence must show that there was some event that caused the injury, not a gradual deterioration." Id. at 708,449 S.E.2d at 238. See, also, Richards v. Town of Valdese,92 N.C. App. 222, 374 S.E.2d 116 (1988), disc. review denied,324 N.C. App. 337, 378 S.E.2d 799 (1989), in which the Court of Appeals found a 10-15 hour period on one day, during which a series of contemporaneous events occurred that could have caused claimant's injury, to be a cognizable time. In the case at bar, the greater weight of the evidence of record shows that plaintiff developed her back condition gradually over a long period of time beginning in 1998 during her employment at Plant 8 and continuing in 2001 at Plant 2. Plaintiff was unable to identify any event or multiple events that caused the injury, but rather the evidence showed a gradual deterioration of plaintiff's condition. Fish v.Steelcase, Inc., supra. Therefore, plaintiff did not sustain an injury by accident as the result of a specific traumatic injury of the work assigned. N.C. Gen. Stat. § 97-2(6).
4. Plaintiff bears the burden of proving each element of compensability in order to prove the existence of an occupational disease within the meaning of N.C. Gen. Stat. § 97-53(13). This requires the plaintiff to show that (1) the disease must be characteristic of a trade or occupation; (2) the disease must not be an ordinary disease of life to which the public is equally exposed outside of the employment; and (3) there must be proof of causation. Hansel v. Sherman Textiles, 304 N.C. 44,283 S.E.2d 101 (1981). In the case at bar there is no evidence to support a contrary theory of the case that plaintiff contracted an occupational disease on or after January 2, 2001. N.C. Gen. Stat. § 97-53(13).
 * * * * * * * * * * *
Based upon the foregoing Stipulations, Findings of Fact and Conclusions of Law, the Full Commission makes the following:
 ORDER
1. Plaintiff's claim under the law is, and must be, DENIED.
2. Each side shall bear its own costs.
This the 10th day of August 2005.
 S/_________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_________________ DIANNE C. SELLERS COMMISSIONER
DISSENTING:
 S/___________________ THOMAS J. BOLCH COMMISSIONER